The character of his act is lawful or unlawful at the time it is done. In the absence of express language it' would be difficult to believe that congress intended that a bankrupt should be permitted to place all his property beyond the reach of the body of his creditors, and yet be granted or denied a discharge, dependent upon the fact whether or not he might see fit to file his petition in bankruptcy within a given period of time thereafter; and especially when, if he should file his petition promptly, so that the property could be recovered by his assignee in bankruptcy and distributed under the act, his discharge should be denied, while if he delayed until too late to assist in this beneficent result, he should be rewarded by a discharge. Yet this is the construction now sought to be enforced. My attention has been called to several cases which it is urged hold a different view from those I have expressed. It will be found that none of them hold that a transfer of property, which is in itself an act of bankruptcy, is not a ground for refusing a discharge because not made within four or six months before the commencement of the proceedings in bankruptcy. Discharge denied.

## Case No. 7,618.

### The KATE.

[Blatchf. Pr. Cas. 550.] [1]

District Court, S. D. New York. Oct. 10, 1863.

#### PRIZE—VIOLATION OF BLOCKADE.

Vessel condemned for an attempt to violate the blockade.

BETTS, District Judge. This vessel was captured at sea, August 1, 1863, off New Inlet, North Carolina, and sent into this port for adjudication. A libel was filed against her, August 26. A warrant of attachment and a monition thereon were served by the marshal on the same day, and were returned in court on the 15th day of September thereafter. Proclamation being made in open court, and no one appearing or intervening for the said vessel, and satisfactory proof being made to the court that, before capture, the said vessel had been chased by the blockading squadron investing the said port, and driven on shore, on her attempting to violate the blockade of the port of Wilmington, North Carolina, on the 12th day of July last, and that she was, on being abandoned, stripped of her lading, rigging, and machinery by the enemy, and was afterwards found so afloat, and was captured by a United States vessel-of-war, and sent to this port, and that she belonged to England, and no contradictory or explanatory evidence being offered thereto, it is ordered that the said vessel be condemned, as prize of war, and forfeited to the United States. Decree accordingly to be entered.

[1] [Reported by Samuel Blatchford, Esq.]

## Case No. 7,619.

### The KATE HERON.

[6 Sawy. 106.] [1]

District Court, D. Oregon. Nov. 18, 1879.

FORFEITURE OF VESSEL—RULE AT COMMON LAW—"LIABLE TO FORFEITURE"—BONA FIDE PURCHASER.

1. Whether a forfeiture given by statute takes effect upon the commission of the act on account of which it is given, or upon the seizure or condemnation of the property, depends primarily upon the intention of congress as evidenced by the language of the statute; but when that is doubtful or uncertain, resort may be had to the rules of the common law relating to forfeitures.

2. A forfeiture 'of lands at common law related to the time of the commission of the offense; but in case of chattels, the forfeiture did not take effect until the conviction of the offender, or a finding that he had fled.

3. Section 4189 of the Revised Statutes, which declares that for the commission of a certain act a vessel "shall be liable to forfeiture," does not effect a present absolute forfeiture, but only gives a right to have the vessel declared forfeited upon due process of law, and the property in the same remains in the owner until seizure and condemnation, which latter relates back to the time of seizure, and invalidates all intermediate sales.

4. A purchaser in good faith of a vessel liable to forfeiture under said section 4189, and before seizure, acquires the title thereto, and may hold the same against the United States.

In admiralty.

Rufus Mallory, for the United States.
Sidney Dell, for claimant.

DEADY, District Judge. This suit is brought by the district attorney on behalf of the United States, to enforce an alleged forfeiture of the schooner Kate Heron, [Walter V. Niles, claimant] her tackle, apparel, and furniture, for the violation of sections 4189 and 4377 of the Revised Statutes.

The libel contains two counts. The first one is drawn under the former of said sections, and alleges that on January 17, 1878, A. Y. Hamilton, as sole owner of said vessel, applied to the collector of the district of Wallamet for a license to carry on the coasting trade, and to that end took and subscribed before John P. Ward, a deputy collector of the customs, the oath required by section 4143 of the Revised Statutes, to the effect among other things, that he was the true and sole owner of said vessel, and that no subject of any foreign power was in any way interested therein or in the profits thereof; in both of which particulars said oath was knowingly false, in this: that Alexander McKenzie, a subject of Great Britain, was then a half owner of said vessel, and as such directly interested in the profits thereof; that by reason of such false and fraudulent representations such vessel was enrolled and licensed by said collector for the

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]